IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

ROBERT STAUFFER

       Plaintiff,

v.                                               No.

PENN STATE HEALTH,  also known as,       JURY TRIAL DEMANDED
THE MILTON S. HERSHEY MEDICAL CENTER

       Defendant.

_____

## COMPLAINT

Plaintiff Robert Stauffer files this Complaint against Defendant Penn State Health, also known as, The Milton S. Hershey Medical Center, and in support thereof, avers as follows:

### Jurisdiction and Venue

1. The jurisdiction of this Court is based upon 28 U. S. C. §1331, in that this Court has original jurisdiction over Counts I, II and III, which are based upon laws of the United States of America, the Americans with Disabilities Act, 42 U.S.C. §12101, as amended by the ADA Amendments Act of 2008 ("ADA"); the Family and Medical Leave Act ("FMLA"), 29 U. S. C. §2601; and the Age Discrimination in Employment Act, 29 U.S. C. §621 ("ADEA").

2. Plaintiff requests a trial by jury of the claims raised herein.

3. Venue is appropriate in this Court pursuant to 28 U. S. C. §1392(b) in that Defendant has ongoing business operations in this District and the events giving rise to the claims occurred in this District.

4. The amount in controversy exceeds $150,000.00, exclusive of interest and costs.

1

5. Plaintiff has complied with the applicable administrative remedies by timely filing a Charge with the Equal Employment Opportunity Commission ("EEOC"), Charge no. 530-2021-02387, on March 10, 2021, and simultaneously dual-filing a Complaint with the Pennsylvania Human Relations Commission ("PHRC") (Case number unknown).

6. On June 2, 2021, the EEOC issued a Notice of Right to Sue, permitting Plaintiff to file his causes of action under the ADA and ADEA in this action.

7. Plaintiff intends to amend this Complaint and assert causes of action for disability discrimination and retaliation under the Pennsylvania Human Relations Act, 43 P. S. §955(a) ("PHRA"), upon receipt of applicable authority from the PHRC.

## Parties

8. Plaintiff Robert Stauffer ("Stauffer") is an adult male, who resides at 136 Whitehorse Drive, Honeybrook, PA 19344.

9. Defendant Penn State Health, also known as, The Milton S. Hershey Medical Center ("PSH") is a Pennsylvania corporation that operates a principle place of business in the Commonwealth of Pennsylvania at 2221 Noll Drive, Lancaster, PA 17603.

10. At all times relevant hereto, PSH was acting through its agents, servants and employees, who were acting within the scope of their authority, in the course of their employment, and under the direct control of PSH.

## Factual Background

11. Stauffer is 68 years of age.

12. Stauffer has in excess of 30 years of experience in medical practice administration and hospital management.

13. On November 12, 2018, Stauffer commenced employment with PSH as a Practice Site Manager II, working at the Lime Spring Outpatient Center in Lancaster, PA.

14. As of February 2021, Stauffer was paid an annual salary of $101,296.00, plus employment benefits.

15. Stauffer was continuously employed from November 12, 2018 until PSH terminated his employment on February 23, 2021.

16. During the course of Stauffer's employment there were four other Practice Managers at the Lime Spring Outpatient Center:

  A. Allison Deascenti, Practice Manager Pediatric Specialties (approximate age: late 20's / early 30's);

  B. Shelley Tuzzatto, Practice Manager Radiology: (approximate age: early 40's);

  C. Daisy Lebron-Plaza, Practice Manager Hematology/Oncology: (approximate age: late 40's).

  D. Bryan Boyd, Practice Manager Community Practice Primary Care: was (approximate age: mid 30's).

  (hereinafter, Allison Deascenti, Shelley Tuzzatto, Daisy Lebron-Plaza and Bryan Boyd, are collectively referred to as, "the Other Practice Managers").

## **Stauffer's Pre-Leave Job Performance**

17. Stauffer reported to Michael Westerberg ("Westerberg"), Senior Director of Ambulatory Practice Site Operations, and Christine Gelnett ("Gelnett"), Outpatient Director.

18. On August 30, 2019, Stauffer received a Performance Appraisal for the period of November 12, 2018 to June 30, 2019, in which he received an overall rating of 3.02, defined as, "successful" under Penn State Health's rating system.

19. On August 31, 2020, Stauffer received a Performance Appraisal for the period July 1, 2019 to June 30, 2020, in which he received an overall rating of 3.00, defined as, "successful," under PSH's rating system.

20. During the course of his employment, Stauffer established many new policies to increase efficiencies and improve his department, including daily COVID-19 protocol huddles for leadership and staff for multiple disciplines; authoring and implementing weather-emergency plan procedures; designing and implementing engagement initiatives; and developing operations improvement initiatives.

21. Stauffer led his department in a successful Joint Commission on Accreditation inspection.

22. Stauffer was well liked by the subordinates that he supervised.

23. PSH issues Employee Engagement Surveys by which subordinates rate their superiors.

24. Rankings prepared on December 14, 2020 show that Stauffer's employee engagement scores in Employee Engagement Surveys were higher than senior PSH leadership, including Westerberg and Gelnett.

25. During the course of his employment, Stauffer received many awards and compliments regarding his job performance, including four Paws Up! employee recognition awards for Teamwork on May 24, 2019 and August 1, 2019; and Excellence on November 7,

4

2019 and April 28, 2020. Stauffer also received an Employee Appreciation Award on March 6, 2020, and a Great Effort Award on March 27, 2020.

### Stauffer's Leaves from Work and Medical Conditions

26. During the period November 19, 2019 through December 10, 2019, Stauffer had to take a leave from work pursuant to the FMLA due to a urinary tract infection.

27. On July 27, 2020, Stauffer had a mild a stroke.

28. Stauffer was on approved FMLA during the period July 27, 2020 through August 23, 2020.

29. Stauffer regularly corresponded with Sarah Taylor ("Taylor"), Strategic Human Resource Business Partner, regarding his leaves from work.

30. As of August 24, 2020, Stauffer was cleared to return to work three to four days per week by his treating physician.

31. As of early September 2020, after Stauffer had completed an ADA Accommodation Request Form, he was permitted to return to work on a remote basis.

32. Stauffer gradually increased his work time at the office and decreased the amount of remote work time until his he returned to the office on a full-time basis.

33. On September 21, 2020, Stauffer's treating physician completed an Intent to Return and Fitness for Duty/Medical Release form that indicated that Stauffer was able to work five days per week, five to six hours in the office, with the remainder of the time working remotely from home.

34. On November 23, 2020 through November 30, 2020, Stauffer was on approved FMLA leave for hospitalization due to dehydration and related issues.

35. As of November 30, 2020, Stauffer's treating physician certified that Stauffer was cleared to return to work with no restrictions.

36. Upon Stauffer's return to work, Westerberg made a negative comment regarding Stauffer's use of a cane and asked Stauffer why he needed it.

37. After Stauffer's return to the office on a full-time basis, he anticipated a need for medical treatment and appointments, once per month, lasting up to four hours.

38. Stauffer was approved for intermittent FMLA leave for the treatments and appointments, and for any episodic incapacitation lasting up to two days per episode.

### The Letter of Concern / Performance and Performance Improvement Plan Issued to Stauffer

39. On January 14, 2021, Stauffer was called to a meeting with his supervisors, Outpatient Director of Ambulatory Site Operations Gelnett, and Senior Director, Ambulatory Site Operations Westerberg, and advised for the first time during his tenure at PSH that he was failing to meet acceptable standards of performance.

40 At the beginning of the meeting, while standing outside of Stauffer's office door where employees were present, Westerberg stated, "So is it your plan to just hang out here for a few months and then leave (in November)?"

41. During the meeting, Westerberg called Stauffer a "liar," and falsely claimed that Stauffer continually lied to him.

42. The reasons provided to Stauffer for the alleged performance deficiencies were not accurate, including false claims about accounts payable, and other alleged activities for which Stauffer was not responsible.

43. At the January 14, 2021 meeting, Stauffer was advised that there would be regular meetings about progress for the next 30 days, at which time, his progress would be assessed, and that sustained improvements were expected.

44. At the meeting, Westerberg asked Stauffer if he could still be successful in his role, and after Stauffer responded, "Yes,"; Westerberg said, "I don't think you can."

45. Stauffer later learned that Westerberg and Gelnett questioned Stauffer's staff and two Supervisors who reported directly to Stauffer, following Stauffer's return from FMLA leave, stating, "What has his performance been since he returned from FMLA Leave?"

46. Thereafter, on January 18, 2021, Stauffer was issued a Letter of Concern / Performance, which indicated, "Over the past eight months, you have received multiple informal conversations and exchanges of instructional emails addressing deficiencies..." (emphasis added).

47. Stauffer's August 31, 2020 Performance Appraisal encompassed the period July 1, 2019 to June 30, 2020, for which Stauffer received a "successful," performance rating, as well as successful ratings in all of the specific performance criteria, in the Performance Review, including Organizational Values, Position Competencies, and Other Requirements.

## Stauffer's Human Resource Complaints

48. On January 15, 2021, one day after the meeting, Stauffer contacted Human Resource Representative Taylor, pursuant to PSH's employment policies, and stated that he was being retaliated against, harassed and subjected to a hostile work environment, due to his prior need for FMLA leave and his request for a reasonable accommodation.

49.     Stauffer advised Taylor that he believed that the creation of a false narrative of an alleged poor performance and a Performance Improvement Plan ("PIP") was in retaliation for recent health issues and FMLA leave.

50.     Within one week of Stauffer's complaint, Tyler Case, Strategic Human Resources Business Partner, advised Stauffer, "Following a comprehensive review of your job description / expectations, 2019 – 2020 Annual Performance Appraisal, Disciplinary Record, as well as personal interviews with affiliated parties (including suggestions provided by you), the claims of a hostile work environment and harassment are unsubstantiated."

51.     Following the issuance of the PIP, Stauffer continued to be placed under great stress and harassment by his supervisors, which at one point, caused him to visit the Emergency Department due to anxiety.

52.     On February 3, 2021, Stauffer again reached out to Human Resource Representative Taylor and stated that he continued to believe he was being targeted and harassed by his senior leaders.

53.     On February 16, 2021, Stauffer informed Taylor that there were repeated references and false claims about his work ethic and character on an ongoing basis, and the situation had not been addressed in any form.

54.     On February 16, 2021, Tyler Case, Strategic Human Resource Business Partner, again advised Stauffer, "Based upon a thorough review of all available evidence, the additional claims of hostile work environment / harassment is un-substantiated."

**The Termination of Stauffer's Employment**

55.     On February 23, 2021, Stauffer was advised by Senior Director of Ambulatory Operations Westerberg, that his employment was terminated effective immediately.

56. Penn State Health's decision to terminate Stauffer's employment was pretextual and based on its desire to terminate an employee who was perceived as disabled, who had recently returned from FMLA leave, who it erroneously was perceived to be retiring at some point in the near future, in order to replace Stauffer with a substantially younger employee.

57. Upon information and belief, PSH has assigned Stauffer's former duties to a substantiality younger employee, and/or hired a substantiality younger employee to replace Stauffer.

58. Stauffer has incurred substantial damages because of Penn State Health's conduct, including lost wages and emotional distress.

59. Penn State Health's actions were willful and outrageous in that its motives and conduct as set forth above were malicious, wanton, reckless and oppressive.

## COUNT I

## VIOLATIONS OF AMERICANS WITH DISABILITIES ACT, AS AMENDED BY THE ADA AMENDMENTS ACT OF 2008

## 42 U. S. C. §12101, et. seq.

### DISABILITY DISCRIMINATION AND RETALIATION

60. Paragraphs 1 to 59 are incorporated herein as if set forth in full.

61. Stauffer has/had a disability in the form of a physical impairment that substantially limits / limited one or more major life activities as compared to the average person or most people in the general population.

62. PSH was aware of Stauffer's disability.

63. Stauffer's disability impacted his ability to work at certain times, and his ability to walk at certain times.

64. Stauffer's disability required him to take a leave from work and to request a reasonable accommodation upon his return to work.

65. Stauffer was qualified to perform his job as Practice Site Manager.

66. Stauffer had a record of impairment.

67. Stauffer suffered an adverse employment decision in the form of the termination of his employment as a result of Penn State Health's discrimination based upon a known disability.

68. As a consequence, PSH has discriminated against Stauffer based upon a perceived disability, regarded Stauffer as disabled, discriminated against Stauffer because he had a record of a disability, and retaliated against Stauffer.

69. In terminating Stauffer's employment, PSH treated Stauffer differently than other similarly situated individuals who are, or were not disabled, or whom PSH did not regard as disabled.

WHEREFORE, Plaintiff Robert Stauffer requests that this Court enter judgment in his favor and against Defendant Penn State Health, also known as, The Milton S. Hershey Medical Center, and that this Court award Plaintiff all damages available under the Americans with Disabilities Act, as amended, including monetary damages exceeding $150,000.00, compensatory damages, punitive damages, reasonable attorneys' fees, reasonable expert witness fees, interest, costs, and any other relief which the Court deems appropriate.

## COUNT II

### VIOLATION OF FAMILY AND MEDICAL LEAVE ACT

### 29 U. S. C. § 2601, et. seq.

70. Paragraphs 1 to 69 are incorporated herein as if set forth in full.

71. Stauffer is an eligible employee under the FMLA in that just prior to his leave from work; Stauffer was continuously employed for more than twelve months and had at least 1,250 hours of service during the past twelve months.

72. At all times during and after Stauffer's employment, PSH was/is an employer subject to the FMLA in that it engages in commerce or in any industry or activity affecting commerce and has employed 50 or more employees within a 75-mile radius of Lancaster, PA, for each working day during each of 20 or more calendar workweeks in the calendar years 2019 to present.

73. Stauffer experienced a "serious health condition" as defined by the FMLA that required him to be unable to work for a period of time for which he was qualified for FMLA leave.

74. Stauffer was entitled to a minimum of the equivalent of twelve workweeks of leave under the FMLA on a full time or intermittent basis during any rolling twelve-month period.

75. Penn State Health retaliated against Stauffer by terminating Stauffer's employment in violation of the FMLA.

76. Penn State Health's actions with respect to Stauffer constitute a willful violation of the FMLA.

77. Stauffer has sustained substantial damages as a result of Penn State Health's actions.

WHEREFORE, Plaintiff Robert Stauffer requests that this Court enter judgment in his favor and against Defendant Penn State Health,  also known as, The Milton S. Hershey Medical Center, and requests that the Court award Plaintiff monetary damages equal to the amount of

11

wages, employment benefits, and any other actual monetary losses sustained, interest, liquidated damages as defined by the Family and Medical Leave Act, and all other relief available under the FMLA, including reasonable attorneys' fees, reasonable expert witness fees, interest, costs, and any other relief which the Court deems appropriate.

## COUNT III

## VIOLATION OF AGE DISCRIMINATION IN EMPLOYMENT ACT

## 29 U. S. C. § 621, et. seq.

78. Paragraphs 1 to 77 are incorporated herein by reference, as if set forth in full.

79. Stauffer was treated differently and less favorably than the Other Practice Managers who are substantially younger and remained employed.

80. PSH's actions towards Stauffer constitute unlawful age discrimination in violation of the ADEA which prohibits discrimination with respect to practices or activities that impact the terms, conditions, or privileges of employment.

81. Defendant PSH's decision to terminate Stauffer's employment and replace him with a substantially younger employees constitutes unlawful age discrimination in violation of the ADEA.

82. Defendant PSH's actions towards Stauffer were arbitrary and capricious, and based on a discriminatory animus towards older employees in the workplace.

83. Defendant PSH's conduct is per se unlawful and constitutes unlawful age discrimination in violation of the ADEA.

84. Stauffer has sustained permanent and irreparable harm because of the termination of his employment.

WHEREFORE, Plaintiff Robert Stauffer requests that this Court enter judgment in his favor and against Defendant Penn State Health, also known as, The Milton S. Hershey Medical Center, and that this Court enter a declaratory judgment that Defendant's actions complained of herein violate the enactments of the federal legislature; and award Plaintiff damages exceeding $150,000.00, in the form of all compensation and monetary losses, which he has been denied, including back pay, front pay, pre-judgment interest; liquidated damages reasonable attorneys' fees, expert witness fees, costs, and any other relief, which the Court deems appropriate.

/S/ Andrew S. Abramson, Esq.
_____
Andrew S. Abramson, Esq.
Abramson Employment Law, LLC
790 Penllyn Blue Bell Pike
Suite 205
Blue Bell, PA 19422
telephone: 267-470-4742
email: asa@aemploylaw.com

Attorney for Plaintiff Robert Stauffer

Dated: June 9, 2021